**No. 21-1638**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

LEILA CATHERINE JOHNSON,
Plaintiff-Appellant,

v.

GLOBAL LANGUAGE CENTER,
Defendant-Appellee.

_____

Appeal from the United States District Court for the
Eastern District of Virginia
_____

**BRIEF FOR APPELLEE**
_____

Cortland C. Putbrese                    Thomas M. Dunlap
Dunlap Bennett & Ludwig PLLC            Dunlap Bennett & Ludwig PLLC
8003 Franklin Farms Drive, Suite 220    8300 Boone Blvd., Suite 550
Richmond, Virginia 23229                Vienna, Virginia 22182
(804) 977-2688                          (703) 777-7319
cputbrese@dbllawyers.com                tdunlap@dbllawyers.com

*Attorneys for Defendant-Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-1638__    Caption: __LEILA CATHERINE JOHNSON v. GLOBAL LANGUAGE CENTER__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Global Language Center__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.    Does party/amicus have any parent corporations? ☐YES ☑NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Thomas M. Dunlap          Date:  6/09/2021

Counsel for: Global Language Center

- 2 -

Print to PDF for Filing

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... iii

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUES.................................................................2

STATEMENT OF THE CASE.....................................................................3

      A.    Introduction ............................................................................3

      B.    Proceedings Below .................................................................4

      C.    Relevant Facts .......................................................................8

SUMMARY OF THE ARGUMENT ..........................................................13

ARGUMENT .............................................................................................14

  I.  The District Court Correctly Concluded That A Reasonable Jury
     Could Not Find That Appellant's Email Sent To State Department
     Employees Qualified As "Protected Activity" Within The Meaning
     Of Title VII. ...........................................................................14

      A.    Standard of Review ..............................................................15

      B.    Elements of a Title VII Retaliation Claim ...........................15

      C.    Appellant's August 7, 2018 Email Was Not "Protected
          Activity." ..............................................................................17

          1.   Appellant's Email Was Based On *Speculation* That Tanya Matar
             *Might* Be Promoted As Appellant's Supervisor In The Future…..17

          2.   Appellant's Email Objectively Did Not Express Opposition To
             Discrimination or Harassment Prohibited By Title VII………….20

  II. The District Court Correctly Concluded That, Alternatively, A
      Reasonable Jury Could Not Find That Appellant Was Terminated
      *Because Of* The Part Of Her Email That May Have Qualified
      As Protected Activity.................................................................21

A.   Standard of Review ................................................................21

B.   There Must Be A "Causal Link" Between An Employee's
     Protected Activity And The Employer's Adverse Employment
     Action. ................................................................................21

C.   A Reasonable Jury Could Not Find That Appellee Fired Appellant
     Based On Any Protected Activity In Her Email……………………23

     1.   Appellant Cannot Rely On Any Alleged "Protected Activity"
          Other Than Her August 7, 2018 Email…………………………..23

     2.   Appellant Has Failed to Rebut The Compelling Legitimate
          Reasons Offered By Appellee For Terminating Her On August 9,
          2018……………………………………………………………25

CONCLUSION ................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1985) ....................................................................................15

*Boyer-Liberto v. Fontainebleau Corp.*,
   786 F.3d 264 (4th Cir. 2015) ............................................................ 16, 17, 21

*Butler v. Drive Auto. Indus. of Am., Inc.*,
   793 F.3d 404 (4th Cir. 2015) .......................................................................15

*Butler v. Emory University*,
   C.A. No. 1:13-CV-151-TCB-LTW, 2014 WL 12798688 (N.D. Ga. Aug. 15,
   2014) ...........................................................................................................16

*Causey v. Balog*,
   929 F. Supp. 900 (D. Md. 1996), *aff'd* 162 F.3d 795 (4th Cir. 1998) .................18

*Cf. Garza v. North East Independent School Dist.*,
   415 Fed. App'x 520 (5th Cir. 2011) ...................................................................27

*ContiCommodity Servs., Inc. v. Ragan*,
   63 F.3d 438 (5th Cir.1995) ...........................................................................18

*Crawford v. City of Fairburn, Ga.*,
   482 F.3d 1305 (11th Cir. 2007) ....................................................................22

*DeJarnette v. Corning Inc.*,
   133 F.3d 293 (4th Cir. 1998) .......................................................................21

*Foreman v. Babcock & Wilcox Co.*,
   117 F.3d 800 (5th Cir. 1997) .......................................................................19

*Foster v. University of Maryland-Eastern Shore*,
   787 F.3d 243 (4th Cir. 2015) .......................................................................22

*Jordan v. Alternative Resources Corp.*,
    458 F.3d 332 (4th Cir. 2006) .................................................. 16, 17, 19

*McKenzie v. Renberg's Inc.*,
    94 F.3d 1478 (10th Cir. 1996) ...........................................................19

*McDonnel Douglas Corp. v. Green*,
    411 U.S. 792 (1973).................................................................. 21, 22

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000) .................................................................. 22, 26

*Smith v. Phillips,*
    455 U.S. 209 (1982)...........................................................................19

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502 (1993)................................................................. 22, 26

*United States v. New York Tel. Co.*,
    434 U.S. 159 (1977)..........................................................................19

*University of Texas Southwestern Medical Center v. Nassar*,
    570 U.S. 338 (2013)..........................................................................23

*White v. City of Annapolis (MD)*,
    Civil No. JFM-13-1330, 2015 WL 5009853 (D. Md. Aug. 15, 2015),
    *aff'd*, 639 Fed. App'x 209 (4th Cir. 2016)...................................... 27, 28

## Other Authorities

Rodney A. Smolla, 2 *Law of Defamation* (2d ed. 2021) ........................................27

## <u>STATEMENT OF JURISDICTION</u>

This Court has jurisdiction under 28 U.S.C. § 1291. Appellant filed a timely notice of appeal concerning the district court's April 27, 2021, order granting summary judgment on May 27, 2021. *See* Joint Appendix ("JA") 11.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly concluded that a reasonable jury could not find that appellant's email sent to State Department employees qualified as "protected activity" within the meaning of Title VII.

2. Whether the district court correctly concluded that, alternatively, a reasonable jury could not find that appellant was terminated because of the part of her email that may have qualified as protected activity.

## STATEMENT OF THE CASE

### A. Introduction

Appellant Leila Johnson twice worked for Appellee Global Language Center (GLC), a woman-owned small business government contractor. She initially was hired in February 2016 but terminated in May 2017 based on a finding of an investigator with the State Department's Office of Civil Rights that appellant had "bullied" a State Department employee in violation of the Department's "workplace violence" policy. JA 129, 132, 209-10. Appellant later was rehired by GLC and thereafter engaged in additional unprofessional conduct—including sending a slanderous email on August 7, 2018, to three State Department officials about another State Department employee. JA 300. Based on appellant's pattern of unprofessional conduct, she was fired a second time on August 9, 2018, after GLC officials discovered that she had sent the unprofessional email. JA 746.

Appellant thereafter sued GLC under Title VII. During the motion to dismiss stage, the district court dismissed the vast majority of appellant's complaint except for a single "sliver" in her Title VII retaliation claim (a ruling that appellant did not appeal). Supplemental Joint Appendix (SJA) 13. Thereafter, the district court granted appellee's motion for summary judgment concerning that sliver of Count III. Appellant has appealed only the district court's summary judgment order.

3

**B. Proceedings Below**

On June 4, 2020, appellant filed her complaint against GLC in the court below.  The only portion of her complaint relevant to this appeal is Paragraph 108 of Count III, which alleges in pertinent part:

> 108.  In dismissing Ms. Johnson from employment on August 9, 2018, GLC retaliated against her for protected activity, to wit, **[1]** complaining [in an email sent on August 7, 2018 to three State Department employees] about past discrimination and sexual harassment by her co-workers and supervisors, **[2]** opposing discriminatory practices that Title VII makes unlawful, and **[3]** protesting the likely continuation of such sex discrimination, sexual harassment, and hostile work environment with the impending installation, as Ms. Johnson's supervisor, of someone—Ms. Matar—against whom she had a pending Title VII complaint.  These acts and omissions by GLC violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

JA 34-35 (bracketed numbers added).

Paragraphs 109-110 in Count III—which concerned an alleged change in job description for Arabic instructors in the Department of State's Foreign Service Institute's School of Language Studies (SLS)—were stricken from the complaint by the district court in partially granting appellant's motion to dismiss.  JA 51.  Appellant did not appeal that ruling.

Regarding paragraph 108, the district court granted appellee's motion to dismiss all but a "sliver" of the three bracketed allegations in that paragraph.  SJA 13.  In particular, the court limited the complaint to the sole allegation that

appellant's "firing on August 9, 2018, was in retaliation for protected activity" in the form of her emailed statements about the prospect of Ms. Matar's becoming appellant's supervisor.  JA 51.  The district court dismissed "the allegations in Count III as [they relate] to [appellant's] first firing on May 17, 2017."  JA 51. The court stated that those allegations were stricken because the alleged actions preceding appellant's first firing in May 2017 have "nothing to do with this case anymore, because the time for having brought [allegations about what occurred during appellant's first period of employment at GLC] to the EEOC has long since past."  SJA 12.  Thus, the allegations concerning retaliation based on alleged "protected activity" *before* the August 7, 2018 email did not remain in the complaint.

In short, the district court's motion to dismiss order effectively struck the following language from paragraph 108—"complaining about past discrimination and sexual harassment by her co-workers and supervisors [and] opposing discriminatory practices that Title VII makes unlawful" related to appellant's first period of employment at GLC in 2016-17—and left only the following allegation: appellant's "protesting the likely continuation of . . . sex discrimination, sexual harassment, and hostile work environment with the impending installation, as Ms. Johnson's supervisor, of someone—Tanya Matar—against whom she had a

pending Title VII complaint." JA 34-35. That latter allegation was the only sliver of paragraph 108 remaining after the motion to dismiss stage.

The effect of the district court's written order of dismissal is confirmed in the court's oral ruling at the hearing on appellant's motion for reconsideration of the court's order granting appellee's motion to dismiss all of Count III. *See* SJA 12-13 (in reinstating a limited part of Count III, the court noted that "[i]t's just that one sliver of retaliation" alleged in Count III "related to [events leading to] appellant's second termination"); *see also id.* at 12 (ruling that the allegation in Count III concerning events that led to appellant's first termination "has nothing to do with this case anymore, because the time for having brought that to the EEOC has long since passed"). Importantly, appellant did not appeal the district court's order dismissing all but a "sliver" of Paragraph 108 in Count III.

Thereafter, following extensive discovery, appellee moved for summary judgment on this remaining portion of Count III, attaching 46 exhibits and four depositions. JA 52 *et seq.* Appellant filed a response in opposition, JA 349 *et seq.*, and appellee filed a reply, attaching many more exhibits and appellant's deposition (which itself contained many more exhibits). JA 380 *et seq.* The summary judgment record was thus extensive.

On April 7, 2021, in an oral ruling later confirmed in a written order (JA 10) (docket entry 92), the district court granted appellee's motion for summary

judgment. The court had two separate, alternative bases for granting summary judgment. First, the court held that appellant's August 7, 2018 email was not "protected activity" within the meaning of Title VII and, thus, no *prima facie* case of retaliation had been demonstrated:

> [T]he only issue before this Court is the retaliation claim [in Count III]. . . . The facts are uncontested that [appellant] was terminated August [9, 2018] as a result of having sent this . . . rather long email [on August 7, 2018] to the Department of State people in which she complained about that a woman who she'd had problems with in the past [*i.e.*, Tanya Matar, a State Department employee] was – or at least the rumor was that this woman might be her supervisor. . . . [T]he email at issue in this case was not sent to anybody at GLC [Global Language Center]. . . . I don't think anyone reading that email could construe it reasonably to be a complaint about impermissible Title VII conduct. This is a complaint about a particular woman who the plaintiff did not want to have to work under. It is not, I believe, what anyone would call protected activity. . . . The problem that I see in this case . . . is that I don't think any reasonable juror or that the law supports a finding that email would qualify as actual protected activity. It is primarily a complaint about the fact that somebody may be a supervisor, and there's a lot of innuendo about personal stuff.

JA 1042-45, 1049.

The district court also ruled that there was an alternative basis for granting summary judgment—namely, that there was insufficient proof that, even assuming some of the email qualified as protected activity, GLC terminated appellant for non-pretextual reasons other than protected activity:

> [Appellant] was terminated by GLC … earlier [in May 2017]. . . . That was the first employment situation. After that, she does file her EEO complaint against the Department of State [as opposed to against

GLC]. GLC [then] rehires [appellant] with full knowledge that she had an EEO complaint pending against the Department of State . . . . [T]he point is that GLC was not opposed to and did not intend to interfere with her being . . . rehired . . . knowing she had an EEO complaint ongoing. . . . [T]he evidence in this case is that there was no decision to terminate [appellant as of mid-2018.]. In fact, her contract [with GLC] had been renewed for another year [on June 29, 2018, *see* JA 125]. . . . So then we have the precipitating incident, . . . the August 7 email that she sends initially only to the State Department people, and it's only after the dean [of the State Department's School of Language Studies] says: You need to raise these issues with GLC . . . [Appellant then] sends a copy to . . . GLC's contract person, who then sends it to Mitchell [the senior vice president of GLC] with the comment, "This could be a problem," . . . and the decision is made on the spot pretty much to terminate her for that kind of conduct. . . .

Even if you did have a prima facie case [of protected activity], the defendant has come back in and has provided evidence that this kind of communication with the customer is a violation of their concerns about professional conduct, in addition to which this is an at-will employment situation, and . . . government contractors are very sensitive about how happy or unhappy their government client is with their work, and it's quite clear if you read the dean's email back to [appellant] that . . . her statement . . . you can't choose your supervisors . . . was clearly an indication that they [the State Department officials] can't have been pleased with that email.

JA 1046-50; *see also id.* at 1060 ("So I'm finding that the . . . prima facie case is not even made in this case, and even if it were made, . . . there are non-pretextual reasons why the plaintiff was terminated . . . .").

## C. Relevant Facts

Although appellant's brief seeks to expand the facts to matters foreclosed by the district court's order dismissing all but a "sliver" of Count III's retaliation

claim, *see* SJA 13, *see* Brief of Plaintiff-Appellant, at 4-5 & 36-42, the only relevant facts before her August 7, 2018 email concern appellant's long history of unprofessional conduct culminating with that email. That misconduct, none of which was protected activity under Title VII, included:

• appellant's "bullying" behavior towards an employee of GLC's client, the State Department, in violation of the State Department's "workplace violence" policy in 2017, as found by a neutral official with the Office of Civil Rights (JA 129)—which led the State Department's contracting officer to demand that GLC terminate appellant in May 2017 and question why appellee had rehired her later (JA 132, 209-10);

• appellant's initial failure to turn in her government-issued badge after being terminated in May 2017, despite repeatedly being requested to do so (JA 144);

• appellant's act in providing false and inaccurate information on a State Department form for a new badge after being rehired by GLC in August 2017 (JA 259);

• appellant's failure to follow the required procedures for requesting leave without pay from GLC in June 2018 before departing on a month-long trip out of the country—leading GLC's senior vice president to note on August 3, 2018, that appellant could be terminated for having effectively quit her job (JA 283, 725);

• appellant's claim to GLC that she needed to travel to Lebanon in July 2018 because of a "family loss" (*i.e.*, a deceased aunt and an ailing grandmother) in order to get approval for leave without pay (JA 783)—even characterizing her trip as a "family emergency" to GLC's vice president (JA 731)—but later referring to her trip as a "great vacation" in her August 7, 2018 email to State Department employees (JA 288, 299); and

• based on what appellant characterized as a "rumor," sending a highly unprofessional email (entitled "Leadership") to three State

9

Department employees, including the dean of the Foreign Service
Institute's School of Language Studies (SLS), in which appellant
engaged in a gossip-filled, *ad hominem* attack on Tanya Matar, a State
Department employee (including claiming that Matar had openly
"flirted" with a student and had referred to her supervisors using
profanity); urged them not to select Matar as appellant's future
supervisor; and stated that she (appellant) could not work under
Matar—*leading the dean to respond that the SLS does not permit SLS
instructors to choose their own supervisors* (JA 300).

Appellant's email to the three State Department officials not only contained

highly unprofessional content in violation of GLC's written policies (JA 879, 982,

985) but also violated GLC's written policies governing its employees who worked

as language and culture instructors with respect to reporting perceived problems

though GLC's "chain of command."  GLC's *SLS Guide for Language and Culture

Instructors* explicitly stated:

> One of the ways new instructors often find FSI [Foreign Service
> Institute] different from other places where they have worked
> (especially if they have previously taught in an academic
> environment) is its explicit chain of command. While the individual
> work you do is indispensable to the operation of FSI, you are also part
> of an organization and a member of a team.  You have a position in
> the chain of command, and it is important for you to know how to
> work within that position and to coordinate with colleagues.  The
> issue is responsibility. Supervisors are directly responsible for the
> work of the employees under their direction, and if something goes
> wrong, supervisors must answer for it [JA 876].

That written policy explained the rationale for the chain-of-command rule

within GLC:

> You will often hear experienced SLS faculty or LSTs [language
> training supervisors] quote the following short rule: "No surprises!"

What this means in the SLS context is that no one wants to receive unexpected information and then discover that someone knew about it some time before. Your LST does not want to hear about a problem two months after you first noticed it. . . . None of us likes to tell our boss bad news, but we need to remember that it is much better to tell it early, when something can be done about it, than to wait until it has become irreparable [JA 876].

Appellant's chain of command included her program manager, Iouri Bairathcnyi, GLC's Program Manager; Leticia Larancuent, GLC's Vice President; David J. Mitchell, GLC's Senior Vice President; and Eugenia Nesterenko, GLC's President. *See* JA 472. Appellant clearly violated GLC's policy concerning the chain of command by sending the email on August 7, 2018, to the three State Department officials, including the SLS dean, without first notifying anyone in her GLC chain of command. Appellant's email clearly came as a "surprise" to her GLC supervisors, as appellant had not previously expressed her concerns at the prospect of Matar's becoming her supervisor to any of them. *See* JA 470.

On August 9, 2018—the very day that GLC terminated appellant—GLC's senior vice president noted in an email to other GLC staff that "[a]fter considerable reflection on Ms. Johnson's actions this morning [referring to her email to State Department officials] *and in the past*, we have decided to move directly to termination." JA 746 (emphasis added). An EEO investigator's report later similarly noted that GLC officials had reported that "there were multiple pending issues with Ms. Johnson, each worse than the last, and that this instance [email

situation] was egregious in and of itself to warrant termination." JA 55. The SLS dean told the EEO investigator that, although the dean had "no concerns about Ms. Johnson's performance as an instructor, I was aware of concerns about her judgment and conduct in terms of relationships with other members of the Arabic [instructors] team." JA 797.

As discussed below, the summary judgment record supports only one rational finding: GLC fired appellant on August 9, 2018, because of an escalating pattern of highly unprofessional conduct—in clear violation of well-established GLC and State Department policies requiring professionalism and its chain-of-command rule. According to the School of Language Studies guide for employees, the "most important" factor affecting quality of the school's training mission "may be an attitude of professionalism on the part of members of our organization." J.A. 879. GLC's guide for employees admonished employees to "[n]ever speak badly about your colleagues or Supervisor." JA 985. Appellant's August 7, 2018 email was the proverbial "final straw." JA 74. As the district court found, appellant's pattern of escalating misconduct—resulting in the SLS dean's response to appellant's email stating that SLS instructors did not get to choose their supervisors—caused GLC leadership to believe that appellant had jeopardized GLC's relationship with a key client, the State Department. *See* JA 1050.

## SUMMARY OF THE ARGUMENT

The district court correctly concluded that no reasonable jury could find that appellant's email was "protected conduct" under Title VII. Viewed objectively, as it must be, the email was a gossip-filled, *ad hominem* attack on a State Department official and an attempt by a private contractor hired as instructor to influence the dean of the State Department's School of Language Studies in a potential personnel decision. In addition, the email did not qualify as protected conduct because it was not based on an objectively reasonable belief that discrimination or harassment by Matar had occurred since appellant's rehiring in August 2017 or was then ongoing. Rather, it expressed a speculative fear—based on a "rumor"—that Matar was a "candidate" for the position of appellant's supervisor *in the future*. Such a statement to State Department officials in charge of selecting that supervisor does not qualify as protected conduct. Therefore, the district court correctly concluded that a reasonable jury could not find a prima facie case of retaliation.

Appellant's brief erroneously seeks to reply on other alleged protected conduct occurring before the email, including her complaints about alleged discrimination and harassment made during her first period of employment with GLC. However, the district court's order dismissing all but a "sliver" of Count III

of appellant's complaint, which appellant did not appeal, forecloses that argument by appellant.

The district court also was correct in alternatively concluding that, even if appellant's August 7, 2018 email contained limited passages that could be construed as protected conduct, GLC clearly was motivated by appellant's unprotected, highly unprofessional pattern of misconduct in deciding to fire her. The fact that GLC's leadership was well aware of appellant's 2017 EEO complaint filed against the State Department <u>and</u> the fact that GLC gave appellant so many chances after repeated instances of misconduct undermines her claim that she was fired in retaliation for purported protected activity in her August 7, 2018 email to the State Department employees.  Appellant's brief, which fails to cite or discuss well-established precedent concerning burden-shifting in Title VII cases not based on direct evidence of retaliation, has come nowhere near rebutting the highly plausible and reasonable bases given by appellee for its decision to terminate appellant.

For these reasons, the district court correctly granted summary judgment, and this Court should affirm the district court's judgment.

## **ARGUMENT**

**I. The District Court Correctly Concluded That A Reasonable Jury Could Not Find That Appellant's Email Sent To State Department Employees Qualified As "Protected Activity" Within The Meaning Of Title VII.**

### **A. Standard of Review**

When a district court grants summary judgment, this Court reviews the issues of (1) whether there was a genuine dispute about a material fact and (2) whether the movant was entitled to a judgment as a matter of law in a de novo manner. *Butler v. Drive Auto. Indus. of Am., Inc*., 793 F.3d 404, 407 (4th Cir. 2015). Regarding whether a genuine dispute about a material fact exists, this Court asks whether, reviewing the summary judgment record in a light most favorable to the nonmovant, a "reasonable" jury could find that the disputed facts exist in a manner that supports the nonmovant as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat summary judgment. *Id.*

### **B. Elements of a Title VII Retaliation Claim**

This Court has described the elements of a Title VII retaliation claim:

Title VII proscribes discrimination against an employee because, in relevant part, she "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). . . . To establish a prima facie case of retaliation in contravention of Title

> VII, a plaintiff must prove (1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events.

*Boyer-Liberto v. Fontainebleau Corp*., 786 F.3d 264, 281 (4th Cir. 2015) (en banc).

Although what an employee "opposes" need not in fact amount to an actionable Title VII violation, the employee "'seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress.'" *Id.* at 282 (quoting *Jordan v. Alternative Resources Corp*., 458 F.3d 332, 340-41 (4th Cir. 2006), *overruled on other grounds by Boyer-Liberto*, 786 F.3d at 268-69, 282-83). Importantly, although "an employee is protected from retaliation when she opposes a hostile work environment that, although not fully formed, is in progress," *Id.* at 282, a Title VII retaliation claim cannot be predicated on alleged retaliation resulting from a claim based on a fear of future discrimination. *See Butler v. Emory University*, C.A. No. 1:13-CV-151-TCB-LTW, 2014 WL 12798688, at *19 (N.D. Ga. Aug. 15, 2014) ("An employee seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation *has happened or is already in progress*, not that the employer *may* engage in a hypothetical, future violation.") (emphasis in original; citing *Jordan*, 458 F.3d at 340-41); *see also Jordan v. Alternative Resources Corp*., 467 F.3d 378,

379 (4th Cir. 2006) (Niemeyer, J., in support of the court's order denying rehearing en banc) (noting Title VII "has never protected employees in connection with their complaints about potential or future violations that they feared might occur").

## C. Appellant's August 7, 2018 Email Was Not "Protected Activity."

As discussed below, there are two reasons that appellant's August 7, 2018 email does not qualify as "protected activity" within the meaning of Title VII. Because it was not protected activity, appellant's Title VII retaliation claim fails as a matter of law. This Court should thus affirm the district court's ruling that a reasonable jury could not conclude that the email constituted protected activity.

### 1. Appellant's Email Was Based On *Speculation* That Tanya Matar *Might* Be Promoted As Appellant's Supervisor In The Future.

This Court should uphold the district court because appellant's August 7, 2018 email does not qualify as protected activity, given that is based on mere speculation. As noted above, this Court has held that a Title VII retaliation claim cannot be based on an adverse employment action resulting from an employee's complaint that she fears discrimination in the future when that discrimination is not yet "in progress." *Boyer-Liberto*, 786 F.3d at 282; *Jordan*, 458 F.3d at 340-41.

Here, appellant's August 7, 2018 email to the State Department employees began by stating: "I heard a *rumor* that Ms. Tanya Matar is a *candidate* to replace one of our current supervisors in the Arabic Department." JA 288 (emphasis

added).  Her email then listed various reasons why appellant "[could] not work under her supervision in good conscience."  *Id.*

As noted, the district court dismissed all of Count III of appellant's complaint except the "sliver" alleging retaliation based on events *after* appellant was initially terminated and later rehired in 2017.  Therefore, the only portion of appellant's retaliation claim still remaining at the time of summary judgment was her assertion that appellee retaliated against her for sending the email complaining about the *possibility* of Matar's becoming appellant's supervisor in the future. Assuming *arguendo* that appellee terminated appellant for making that statement in her email (as opposed to terminating her for her unprofessional behavior), appellant has no legal basis to complain under Title VII.  That is because appellant's retaliation claim against appellee may not rely on any of her email's allegations about Matar's alleged discrimination and retaliation during appellant's *first* period of employment.  Moreover, the summary judgment record contains no evidence supporting an objectively reasonable belief that appellant was subject to any Title VII violations by Matar during appellant's *second* period of employment. *See Causey v. Balog,* 929 F. Supp. 900, 910 (D. Md. 1996), *aff'd* 162 F.3d 795 (4th Cir. 1998) (holding that a non-movant "'is required to identify specific evidence in the record, and to articulate the "precise manner" in which that evidence supported their claim'") (quoting *ContiCommodity Servs., Inc. v. Ragan,* 63 F.3d 438, 441

(5th Cir.1995)).   Rather, appellant's email was based solely on speculation (arising from a "rumor") about a possibility that Matar's "candidacy" might prove successful during appellant's second period of employment.  Such speculation does not qualify for protection from retaliation under Title VII.  *See Jordan*, 467 F.3d at 379 (Niemeyer, J., in support of the court's order denying rehearing en banc) (noting Title VII "has never protected employees in connection with their complaints about potential or future violations that they feared might occur"). Therefore, appellant did not satisfy the first element of a Title VII retaliation claim. This Court should affirm the district court's summary judgment for that reason.

In the court below, appellee did not make this specific sub-argument within its broader argument that appellant had failed to make out a prima facie case.  But appellee may do so on appeal as an independent basis that supports the district court's judgment.  *See United States v. New York Tel. Co.*, 434 U.S. 159, 166 n.8 (1977) ("[T]he prevailing party [on appeal] may defend a judgment on any ground which the law and the record permit that would not expand the relief it has been granted."); *Smith v. Phillips,* 455 U.S. 209, 215, n.6 (1982) (same); *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir. 1997) ("We must affirm a judgment of the district court if the result is correct, even if our affirmance is upon grounds not relied upon by the district court.") (citing, *e.g*., *McKenzie v. Renberg's Inc.,* 94 F.3d 1478 (10th Cir. 1996)).

2. <u>Appellant's Email Objectively Did Not Express Opposition To Discrimination or Harassment Prohibited By Title VII.</u>

The district court correctly concluded that, when viewed objectively, appellant's email sent to the State Department employees, a "somewhat rambling diatribe," could not be "reasonably [construed] to be a complaint about impermissible Title VII conduct." JA 1044, 1060. Instead, it "is a complaint about a particular woman who the plaintiff did not want to work under." JA 1044-45. Furthermore, as explained above, only portions of appellant's email concerning alleged discrimination and harassment occurring during appellant's *second* period of employment would be relevant. But notably, that email contained no allegations about Matar's conduct during appellant's second period of employment. Consequently, the district court's application of the objective standard to appellant's rambling, gossip-filled email was correct and should be affirmed on appeal.

## II. The District Court Correctly Concluded That, Alternatively, A Reasonable Jury Could Not Find That Appellant Was Terminated *Because Of* The Part Of Her Email That May Have Qualified As Protected Activity.

### A. Standard of Review

The same standard of review set forth concerning Issue One applies to Issue Two. *See supra* page 15.

### B. There Must Be A "Causal Link" Between An Employee's Protected Activity And The Employer's Adverse Employment Action.

For a Title VII retaliation claim to be actionable, the plaintiff must prove that there was a "causal link" between the employee's exercise of protected activity and the employer's adverse employment decision. *Boyer-Liberto*, 786 F.3d at 281. The plaintiff must offer "substantial evidence" establishing a "reasonable probability" of a causal link rather than "a mere possibility." *Cf. DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir. 1998) (Title VII discrimination claim).

When a plaintiff (like appellant in the present case) fails to offer direct evidence that her employer retaliated against her in violation of Title VII, and instead relies on the mere fact that the plaintiff suffered an adverse employment action after engaging in supposedly protected activity, the plaintiff is subject to the burden-shifting framework of *McDonnel Douglas Corp. v. Green*, 411 U.S. 792

(1973).  *See Foster v. University of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015).

Under *McDonnel Douglas*, a plaintiff first must establish a prima facie case that retaliation based on protected activity occurred.  If the plaintiff establishes such a prima facie case, the burden of production shifts to the employer to offer evidence that the employer engaged in the adverse employment action for a non-retaliatory reason.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).  If the employer satisfies that burden of production, then the burden shifts back to the plaintiff, who must prove by a preponderance of the evidence that each of the employer's proffered reasons for engaging in the adverse employment action actually were pretexts for retaliation.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).  A plaintiff cannot establish a pretext by simply demonstrating facts that suggest retaliatory animus but must specifically respond to each of the employer's reasons for the adverse action and rebut *each* of them. *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1309 (11th Cir. 2007).  A proffered reason is not pretextual unless the plaintiff <u>both</u> demonstrates that the reason given was false <u>and</u> that retaliation for protected activity was the actual reason for the adverse employment action.  *See Foster*, 787 F.3d at 252 (citing *St. Mary's Honor Ctr.,* 509 U.S. at 515).

If there are unrebutted reasons other than the plaintiff's protected activity that motivated the employer to engage in the adverse employment decision, the employee cannot make out a valid Title VII retaliation claim. *See University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

Notably, other than citing case law concerning "pretextual" bases for termination, appellant's brief does not discuss this well-established precedent concerning the burden-shifting framework governing Title VII retaliation claims. *See* Brief of Plaintiff-Appellant, at 36-42.

**C. A Reasonable Jury Could Not Find That Appellee Fired Appellant Based On Any Protected Activity In Her Email.**

1. <u>Appellant Cannot Rely On Any Alleged "Protected Activity" Other Than Her August 7, 2018 Email.</u>

Appellant contends that "even assuming for the sake of argument that Johnson's August 7 email was not protected activity, the district court still erred in granting GLC summary judgment because a reasonable jury could find that Johnson's other oppositional activity and filing of an EEO complaint caused GLC to fire her." Brief of Plaintiff-Appellant, at 36; *see also id.* at 41-42 ("And

23

assuming for the sake of argument that the August 7 email was not protected activity, GLC did no investigation into how the email was received by FSI and whether FSI management found it to be troublesome."). Appellant's argument here is entirely without merit.

As an initial matter, appellant improperly attempts to rely on alleged protected conduct that the district court struck from appellant's complaint. And, notably, because appellant never appealed the district's court's ruling in this regard, this Court should not permit appellant to rely on such alleged facts in support of her appeal.

Specifically, as discussed above, the district court's September 29, 2020, order on appellee's motion to dismiss narrowed the retaliation claim to the "sliver" involving appellant's email to the State Department employees about what allegedly had occurred *after* appellant was rehired by GLC in August 2017. The court struck the portion of Paragraph 108 of the complaint concerning alleged discrimination, harassment, and retaliation occurring during appellant's first period of employment.

Importantly, in her response to appellant's motion for summary judgment in the court below, appellant alleged two types of "protected activity": (1) appellant's August 7, 2018 email and (2) appellant's "prior EEO activity" in connection with her first termination, which appellant mentioned to her GLC supervisor when she

was rehired (but no allegation of any other protected activity occurring *after* she was rehired, except the email).     JA 373-74.     However, the district court's September 29, 2020 order limiting the scope of Count III foreclosed appellant's right to rely on alleged protected activity during her first period of employment. And, as mentioned, appellant did not appeal this particular ruling by the district court.  Furthermore, the district court's extensive oral comments at the hearing on the summary judgment motion—as well as appellant's counsel's own arguments— solely focused on the August 7, 2018 email as the alleged "protected activity."  JA 1041-60.  For these reasons, appellant cannot now rely on other types of alleged protected activity (i.e., that which pre-dates appellant's August 7, 2018 email) in challenging the district court's order granting summary judgment.  Thus, if this Court agrees with the district court that the August 7, 2018 email, as it related to what occurred during appellant's second period of employment with GLC, was not protected activity, appellant cannot make out a prima facie case.

> 2. <u>Appellant Has Failed to Rebut The Compelling Legitimate Reasons Offered By Appellee For Terminating Her On August 9, 2018.</u>

After finding no "protected activity" in the email, the district court alternatively concluded that, even assuming *arguendo* that appellant's email contained some protected oppositional activity, appellee failed to offer sufficient evidence that she was fired *based on* such protected activity.  In particular, the

district court pointed to appellant's failure to offer sufficient proof rebutting appellee's explanation that it fired appellant on August 9, 2018, based on her long pattern of unprofessional conduct that culminated with the portion of the email that unquestionably did not qualify as protected activity—namely, her gossip-laden, *ad hominem* attack on Tanya Matar, to which the SLS's dean responded by stating that SLS instructors do not get to choose their supervisors.  The district court also noted that other evidence—including GLC's leadership's knowledge when they rehired appellant that she had filed an EEO complaint against the State Department and GLC's decision to *renew* appellant's contract in June 2018—strongly militated against a finding that GLC retaliated against appellant based on any protected activity.  JA 1050, 1054, 1060.  That is, the district court correctly held that appellant had failed to rebut the compelling evidence offered by appellee that it had fired appellant based on her escalating pattern of unprofessional conduct rather than for any purported "protected activity" contained in her email.  Such a failure to rebut forecloses appellant's Title VII claim.  *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07; *Reeves*, 530 U.S. at 143.

The district court correctly concluded that the record overwhelmingly supports but one rational finding: appellee fired appellant because of her long record of unprofessional conduct that violated the conduct of both GLC and the State Department.  *See supra* pages 8-10 (setting forth appellee's year-long history

of escalating professional misconduct).  In addition, the allegations in appellant's email about Matar's flirting with a student and similar misconduct that had nothing whatsoever to do with alleged discrimination against appellant constituted rank defamation.  GLC, as appellant's employer, potentially could have been held liable for such defamation under the doctrine of respondent superior.  *See* Rodney A. Smolla, 2 *Law of Defamation* § 15:24 (2d ed. 2021) ("Libels are held subject to normal vicarious liability principles in all jurisdictions.").

Appellee has come nowhere close to rebutting the compelling and obvious reasons offered for appellee's decision to fire her on August 9, 2018.  *Cf. Garza v. North East Independent School Dist.*, 415 Fed. App'x 520, 523 (5th Cir. 2011) ("The record shows that both schools had independent, legitimate reasons for abandoning their use of Garza as a substitute teacher, based on Garza's [un]professional behavior.  Thus, even if Garza had satisfied her burden of production, and the duty shifted to the School District to rebut the presumption, the School District successfully rebutted the presumption."); *White v. City of Annapolis (MD)*, No. JFM-13-1330, 2015 WL 5009853, at *11 (D. Md. Aug. 15, 2015) ("White offers no evidence to rebut the APD's legitimate, non-discriminatory rationale—White was unprofessional and discourteous to a civilian at the police station, and then made a false statement implicating another officer in an attempt to avoid responsibility.  The plausibility and reasonableness of that

rationale would set a high bar for White to prove pretext; a bar White has not even attempted to surmount."), *aff'd*, 639 Fed. App'x 209 (4th Cir. 2016).

Similarly, the plausibility and reasonableness of appellant's record of unprofessional conduct as a basis for termination set a high bar for appellant to prove pretext. She has failed to surmount it.

As explained above, the district court's dismissal of all but a "sliver" of appellant's Count III effectively limited appellant's retaliation claim to her email's statements about events occurring *after* her initial termination from GLC in May 2017. Even assuming for the sake of argument that appellant's retaliation claim included her email's statements about alleged discrimination *before* her first termination, appellant still failed to rebut appellee's strong evidence that it terminated appellant the second time based on her escalating pattern of unprofessional conduct that did not qualify as protected activity.

Finally, this Court should summarily reject appellant's attempt to create a "pretext" where one clearly does not exist. *See* Brief of Plaintiff-Appellant, at 19-25 (contending that appellee's reasons offered for terminating appellant were false and pretextual). The record clearly shows that appellee fired appellant for her escalating pattern of highly unprofessional misconduct. As noted above, on August 9, 2018—the very day that GLC terminated appellant—GLC's senior vice president noted in an email to other GLC staff that "[a]fter considerable reflection

on Ms. Johnson's actions this morning [referring to her email to State Department officials] *and in the past*, we have decided to move directly to termination." JA 746 (emphasis added). Furthermore, the EEO investigator's report later similarly noted that GLC officials had reported that "there were multiple pending issues with Ms. Johnson, each worse than the last, and that this instance [email situation] was egregious in and of itself to warrant termination." JA 55. After appellant was terminated the second time, the SLS dean also noted appellant's prior record of conduct issues. JA 797. That contemporaneous evidence of GLC's leadership's reasons for terminating appellant for a long record of misconduct entirely undermines appellant's claim that GLC only later came up with pretextual reasons for firing appellant. This Court should affirm the district court's summary judgment.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should affirm the district court's judgment.

Dated: September 16, 2021                    Respectfully submitted,

*/s/ Thomas M. Dunlap*
Thomas M. Dunlap (VSB #44016)
Dunlap Bennett & Ludwig PLLC
8300 Boone Blvd., Suite 550
Vienna, Virginia 22182
(703) 777-7319
tdunlap@dbllawyers.com

Cortland C. Putbrese (VSB #46419)
Dunlap Bennett & Ludwig PLLC
8003 Franklin Farms Drive, Suite 220
Richmond, Virginia 23229
(804) 977-2688
cputbrese@dbllawyers.com

*Attorneys for Defendant-Appellee*

## STATEMENT CONCERNING ORAL ARGUMENT

Appellee does not request oral argument. The record and applicable law clearly foreclose the arguments made in appellant's brief.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Brief for Appellee has been served by the Fourth Circuit's electronic filing system on Jack Jarrett on this 16th day of September 2021.

*/s/ Thomas M. Dunlap*
Thomas M. Dunlap

## CERTIFICATE OF COMPLIANCE

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f), this brief contains 6,580 words. This brief complies with the typeface and type-style requirements because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Thomas M. Dunlap*
Thomas M. Dunlap